# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:

David Michael Maresca,                         Case No. 20-11483-KHK
aka Dave Maresca
aka David Maresca

       Debtor.                            Chapter 7

-------------------------------------

John P. Fitzgerald, III,
Acting United States Trustee
For Region 4,

       Plaintiff.

vs.                            Adversary Proceeding No.

David Micael Maresca
aka Dave Maresca
aka David Maresca,

       Defendant.


## UNITED STATES TRUSTEE'S
## COMPLAINT FOR DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727

COMES NOW John P. Fitzgerald, III, Acting United States Trustee for Region 4 (the

"United States Trustee" or "Plaintiff"), and objects to the entry of discharge for the above-

Michael T. Freeman
Assistant United States Trustee
Office of the U.S. Trustee
1725 Duke Street
Suite 650
Alexandria, VA 22314
Direct: (703) 557-7274
Mobile: (202) 934-4174
Fax: (703) 557-7279
Michael.T.Freeman@usdoj.gov

referenced Debtor pursuant to 11 U.S.C. § 727 and Fed. R. Bankr. P. 4004.  In support thereof, the

United States Trustee respectfully states as follows:

## PRELIMINARY STATEMENTS

1.      This adversary proceeding arises in the voluntary bankruptcy case of David

Michael Maresca ("Debtor" or "Defendant"), case no. 20-11483-KHK, filed on June 19, 2020, in

the United States Bankruptcy Court for the Eastern District of Virginia.

2.      This Court has jurisdiction to hear and decide this matter pursuant to 28 U.S.C.

§§ 157 and 1334 and the United States District Court for the Eastern District of Virginia's general

order referring bankruptcy cases and matters arising in or related to bankruptcy cases to this Court.

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

4.      Venue is proper pursuant to 28 U.S.C. § 1409.

5.      The United States Trustee has standing to bring this complaint under 11 U.S.C.

§§ 307 and 727(c)(1).  The statutory predicates for the relief sought are found in 11 U.S.C.

§ 727(a).

6.      The deadline within which to object to Defendant's bankruptcy discharge is May

7, 2021.  This complaint is timely filed in accordance with Fed. R. Bankr. P. 4004(b)(1).

## PARTIES

7.      Plaintiff is the duly appointed Acting United States Trustee for Region 4.  His

address for the Eastern District of Virginia is in the care of the Office of the United States Trustee,

1725 Duke Street, Suite 650, Alexandria, Virginia 22314.

8.      Defendant David Michael Maresca is an adult individual, the bankruptcy debtor in

case number 20-11483-KHK and the defendant in the present adversary proceeding.   On

Defendant's bankruptcy petition, he states that his address is 13159 Lakehill Drive, Nokesville, Virginia 20181.[1]

## STATEMENT OF FACTS

***Procedural Background***

9.        Defendant filed a voluntary individual chapter 11 bankruptcy petition on June 19, 2020 (the "Petition Date").[2]  Defendant has been represented by counsel at all times since the Petition Date.

10.        Defendant did not file any of the Schedules, Statement of Financial Affairs ("SOFA"), or other documents required by Fed. R. Bankr. P. 1007 with his petition.  The clerk issued a notice pursuant to Local Bankruptcy Rule 1007-1 noting that Defendant had not timely filed required documents, ordering that he had until July 6, 2020, to file them, and setting a show cause hearing for June 14, 2020.[3]  Defendant filed the missing schedules and other documents on July 6, 2020, and the hearing was cancelled.

11.        Defendant signed his petition, schedules, and SOFA under penalty of perjury, affirming that the information provided therein was true and correct.[4]

12.        Defendant's original Schedule A/B stated that he is the principal owner, holding a 90% interest, of Synergy Law, LLC, which is the debtor in case number 19-00555 pending in the United States Bankruptcy Court for the District of Columbia.[5]

---

[1] *See* Ex. 1, Voluntary Petition in Case No. 20-11483-KHK (Bankr. E.D. Va.), ECF No. 1.
[2] *Id.*
[3] *See* Ex. 2, Notice of Deficient Filing and Order to Show Cause, ECF No. 7.
[4] *See* Ex. 3, Schedules*, ECF No. 13 at 52; Ex. 4, Statement of Financial Affairs, ECF No. 14, at 11.
[5] *See* Ex. 1 at 3.

13.     Defendant's original Schedule A/B also stated that he is the 90% owner of Themis Law.  Defendant additionally disclosed that he was the 100% owner of Synergy Consulting, Synergy Attorney Services and Synergy Catering, LLC.[6]

14.      As principal owner of Synergy Law, Defendant purported to take advantage of District of Columbia Rule of Professional Conduct 5.4(b), allowing a non-lawyer to co-own a law firm with a lawyer, by associating with a lawyer, Scott Marinelli (who owned the remaining 10% of Synergy Law).[7]  According to Defendant, Synergy Law provided foreclosure defense and bankruptcy legal services.  Defendant testified that Mr. Marinelli was convicted of unspecified charges, was disbarred, and is currently incarcerated.[8]

15.     Synergy Law's operations were highly problematic.  Synergy Law advertised that its services could help its clients avoid foreclosure.  When a client agreed to engage Synergy Law's services, they entered into a retainer agreement allowing Synergy Law to automatically withdraw monthly payments for an agreed term.  Typically, Synergy Law's "services" were ineffective at preventing foreclosure proceedings.  At that point, a non-lawyer Synergy Law employee would recommend that the client file a chapter 13 bankruptcy petition.  If the client agreed, Synergy Law would charge an additional fee for its non-lawyer employees to prepare a skeletal petition, theoretically to be referred to an attorney licensed to practice in the relevant jurisdiction.  In reality, non-lawyer Synergy Law employees would sometimes skip the attorney review process and file the petition themselves using the local counsel's CM/ECF account.

---

[6] *See* Ex. 3 at 4.
[7] Ex. 5, Tr. of Jan. 26, 2021, hearing, ECF No. 84 at 28:2-8.  The United States Trustee does not concede that Synergy Law's structure, or Themis Law's structure, complies with D.C. R. Prof. Conduct 5.4(b).
[8] *Id.* at 28:10-14.

16.     United States Trustees around the country brought enforcement actions against Synergy Law under 11 U.S.C. §§ 110, 329, 526, and 528 for, among other things, the unauthorized practice of law, failure to disclose fees paid as petition preparers, and failing to deliver promised and paid-for bankruptcy services.  As a result, Synergy Law was ordered to return fees, pay civil penalties, and has been enjoined from practicing bankruptcy law in several jurisdictions.  By the time Synergy filed bankruptcy, United States Trustees held over $200,000 in judgments against it. Debtor himself is personally liable for over $100,000 of that total, and the claims registers in this case and the Synergy Law case reflect hundreds of thousands of dollars in additional claims filed by Synergy Law's victims, bankruptcy administrators in non-United States Trustee Program jurisdictions, and bankruptcy courts for sanctions owed.

17.     On July 24, 2019, Defendant and attorney Sam Babbs started Themis Law, PLLC ("Themis Law").  Sam Babbs owns the remaining 10% of Themis Law. [9]

18.     Themis Law's structure is substantially the same as that of Synergy Law – Defendant has partnered with a lawyer holding a minority stake in the company to ostensibly permit it to deliver legal services. [10]  Plaintiff is informed and understands that Mr. Babbs is licensed in the District of Columbia but resides and maintains his primary law practice in Florida. Themis Law operates on the same business model as Synergy Law, and Defendant testified that his duties at Synergy were "exactly the same as it is now, CEO, and I did the same duties with them as I do with Themis." [11]  In fact, Themis Law uses the same leased office space, the same employees, and offers the same services as Synergy Law, and when Synergy Law failed, its clients and work-in-progress were simply transferred to Themis Law.

---

[9] Ex. 6, Tr. of July 23, 2020 § 341 Meeting at 23:13-17.
[10] *See* Ex. 7, Themis Operating Agreement.
[11] Ex. 6 at 101:10-14.

19.     Defendant filed amended schedules on August 19, 2020, and again on September 9, 2020, to correct deficiencies in the original filings.[12]  Defendant has never amended his answers to Question 19 regarding ownership of companies.

20.     Defendant appeared with counsel and testified at the first chapter 11 § 341 meeting of creditors held on July 23, 2020.

21.     Among other things, Defendant specifically stated under oath that his Schedules and SOFA were true and correct.[13]

22.     The United States Trustee identified errors and omissions in Defendant's bankruptcy schedules and other documents, as well as Defendant's failure to provide documents requested by the United States Trustee and continued the meeting of creditors to August 20, 2020. Defendant agreed to amend his filings, to file the Periodic Reports Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest ("Forms 426") for each of his identified businesses, and to provide missing documents and additional documents that had been identified during the meeting.[14]

23.     Defendant testified at the July 23, 2020, § 341 meeting that he had not filed individual tax returns for tax years 2017, 2018, or 2019.[15]  He further testified that he believed he had filed individual returns for tax years 2014, 2015, and 2016.[16]  Defendant agreed that he needed to file returns for 2017-2019 and stated that he expected to have them filed within "the next sixty days or less."[17]

---

[12] *See* Exs. 8, 9, Amended Schedules, ECF Nos. 29 and 44.
[13] Ex. 6 at 11:18-22.
[14] *Id.* at 22:3-7; 24-7-18; 109:20-113:7.
[15] *Id.* at 33:15-17.
[16] *Id.* at 33:18-21.
[17] *Id.* at 34: 6-14.

24.     The Defendant did not file amended schedules or the Forms 426 until August 19, 2020, one day prior to the continued § 341 meeting.[18]

25.     The continued § 341 meeting was held on August 20, 2020.  Defendant again appeared with counsel and testified that he was aware of the contents of the amended schedules and Forms 426 that had been filed the night before, and that he had signed them.[19]  Again the United States Trustee identified omissions and errors in the amended bankruptcy documents. Again, Defendant failed to provide requested information, including any financial records for the Defendant's current business.  And again, Defendant pledged to provide corrected documents and the requested information, and the meeting was continued until September 10, 2020.

26.     The Defendant filed amended schedules on September 7, 2020.

27.     The continued § 341 meeting was held on September 10, 2020.  Defendant appeared with counsel and testified that he had still not filed tax returns for himself or his business.[20]  His counsel also acknowledged that Defendant had not filed the initial Form 426 for Themis Law, PLLC – even though that business was Defendant's sole source of income.[21]

28.     On November 18, 2020, the United States Trustee moved to convert Defendant's case to chapter 7 based on his failure to comply with his duties as a chapter 11 debtor—including by failing to provide any ordinary business records or adequate financial information for any of his businesses, including Themis, and failing to provide tax returns for himself or his businesses — as well as his failure to propose a chapter 11 plan and his bad faith in filing and pursuing the case.

---

[18] *See* Ex. 8.
[19] Ex. 10, Tr. of Aug. 20, 2020 § 341 meeting at 5:22-24
[20] Ex. 11, Tr. of September 10, 2020, § 341 meeting at 6:17-8:6.
[21] *Id.* at 9:13-23.

29.     The Court held a hearing on the United States Trustee's motion to convert on January 26, 2021, and found that "based on the debtor's failure to disclose information that was necessary to complete an investigation, and his credibility issues demonstrated here today . . . it is necessary to convert this case to a Chapter 7 so that an impartial trustee can investigate the estate."[22]  The Court entered an order converting the case to chapter 7 on February 2, 2021.  The Debtor filed a motion to reconsider the conversion, which the United States Trustee and chapter 7 trustee opposed, but withdrew it when it came on for hearing on March 23, 2021.[23]

***Defendant's Numerous Misstatements and Omissions***

**In the Statement of Financial Affairs**

30.     Debtor's Statement of Financial Affairs filed on July 6, 2020, contains the following misstatements and omissions that have never been corrected:

a.     In response to Question 27, Defendant failed to disclose that he is chairman of the board and treasurer for the Grace and Truth Church International, Inc., with control over the church's bank account.  The church's existence was only discovered from the Virginia State Corporation Commission public records during the course of the United States Trustee's investigation, and Defendant confirmed his role in the Church at the § 341 meeting held on August 20, 2020.[24]

---

[22] Ex. 5 at 39:13-17.
[23] *See* ECF Nos. 106, 114, and 146.
[24] Ex. 10 at 15:16-16:2; Ex. 4 at 10-11.

b.  Also, in response to Question 27, Defendant failed to disclose his ownership of Synergy Staffing, even though it acted as the pass-through employer and payroll provider for Synergy Law and Themis Law's employees.[25]

c.  Defendant reported gambling winnings for both 2018 ($23,118) and 2019 ($16,657) in response to question 5 of the SOFA.[26]  His purported income tax returns for those years do not reflect any gambling income.[27]

d.  Also, in response to Question 5, Defendant reported zero income from any sources for 2020, but the Defendant's business, Themis Law, made at least eight domestic support payments during 2020 on Defendant's behalf to his ex-spouse for child support, including three that occurred post-petition, on July 1, 2020, July 31, 2020, and September 9, 2020.[28]  The Defendant did not file any Monthly Operating Reports for those months thereby perpetuating his failure to disclose these transactions.

e.  Also, with respect to Defendant's response to Question 5, upon information and belief Themis Law has and continues to pay regular personal living expenses on Defendant's behalf, which are not reflected as income to him.

f.  Further, records for the Themis Law account ending in 2953 show cash withdrawals from March 2020 through June 2020 totaling $66,007.50.  The SOFA does not reflect any disposition of those funds, whether as income to

---

[25] Ex. 4 at 10-11.
[26] Ex. 4 at 2.
[27] Ex. 12, Amended Objection to Claim Filed by Internal Revenue Service, ECF No. 100.
[28] Ex. 15 at 10:2-11; Ex. 13, Themis General Ledger (excerpt).

Defendant or as transfers made to others. Defendant has never disclosed nor explained these cash withdrawals.

**In the Schedules**

31.     Defendant reported on the Schedule A/B filed on July 6, 2020, that he was owed $276,000 in unpaid payroll compensation.[29]  But, at the initial § 341 meeting, Defendant testified that he is not actually owed anything, and what he had reported on Schedule A/B was "just not correct.  I don't know where that came from."[30]

32.     Defendant also initially reported on Schedule A/B that he had $1,500 in cash and no interests in any financial accounts.[31]   This disclosure is inconsistent with the large cash withdrawals from the Themis bank account in the months leading up to Defendant's bankruptcy filing and with his use of Themis' bank accounts to pay personal expenses.

33.     Defendant's Schedule G failed to disclose the existence of the lease for Defendant's business premises, even though the lease is in Defendant's name and had been in place for five years.[32]

34.     Defendant has generally reported his income and its sources inconsistently throughout this case.

  a.   Schedule I, which Defendant has never amended, stated that Defendant's gross monthly income was $18,000, which is generally consistent with Defendant's testimony that he would be paid $4,000 per week.[33]  Schedule I also stated that the Defendant was not employed, even though he was employed by Themis

---

[29] Ex. 3 at 5.
[30] Ex. 6 at 52:16-53:21.
[31] Ex. 3 at 3-4; Ex. 6 at 12:1-9.
[32] Ex. 3 at 38.; Ex. 6 at 95:17-96:10.
[33] Ex. 6 at 79:19-21.

Law as its CEO. Schedule I was also incomplete and never corrected inasmuch as it apparently only disclosed Defendant's net business income without reflecting gross business income less expenses, as required at Line 8a.

b. On his Statement of Your Current Monthly Income (Form 122A-1), filed after conversion of the case to chapter 7, Defendant claimed total monthly income of $25,723.33.[34]

c. And none of these figures are consistent with the limited and incomplete tax returns available to the United States Trustee, as discussed below. Additionally, Themis Law bank account records for the six months prior to filing reflect direct payments of Defendant's personal expenses that upon information and belief are not reflected as income to Defendant in his schedules, in the monthly operating reports filed in connection with this case during its pendency in chapter 11, or in Defendant's tax returns.

d. The United States Trustee reserves the right to amend this complaint with respect to evidence adduced in discovery of any additional income that Defendant has failed to disclose.

35.    In response to Question 2 on Schedule J, Defendant checked the box stating that he had no dependents, yet Defendant claimed three dependents on his 2017, 2018, and 2019 tax returns.[35]

---

[34] Ex. 14, Chapter 7 Statement of Your Current Monthly Income, ECF No. 123.
[35] Ex. 3 at 47; *See* ECF 79 at Exs. 2, 3, 4.

**At 341 Meetings**

36.     When inconsistencies or inaccuracies in his bankruptcy schedules and SOFA were brought to Defendant's attention at the § 341 meetings, he acknowledged that the schedules should be amended and stated that he would submit amended documents, but, other than submitting an amended Schedule A/B, he made no other changes.[36]  At the hearing on the United States Trustee's motion to convert, the court noted that Defendant had failed to amend his schedules.[37]

37.     Defendant testified multiple times that Themis Law does not do any bankruptcy work.[38]  For example, at the initial 341 meeting, held on July 23, 2020, Defendant stated his strong aversion to bankruptcy work, blaming the expansion into bankruptcy work as a major factor in the failure of Synergy.[39]  But these statements are contradicted by an agreement that was signed by Defendant for the purpose of hiring attorney J.D. Haas for the purpose of handling bankruptcy work for Themis Law in Iowa.[40]  The agreement also sets out the rates to be paid to Mr. Haas for bankruptcy work, and Themis Law paid him $866 for bankruptcy work he performed for a Themis Law client in December 2020.[41]

38.     Defendant also stated at the April 5, 2021, meeting that Mr. Babbs was the one who executed agreements between Themis Law and attorneys.  Defendant stated that he only reviewed employment agreements with staff, not attorneys.[42]

---

[36] Ex. 6 at 111:1-16, 89:3-12; Ex. 10 at 12:6-15; Ex. 15, Tr. of March 8, 2021, § 341 meeting at 7:9-22, 46:1-7.
[37] Ex. 5 at 36:22-37:1.
[38] Ex. 6 at 84:20-22, 89:3-16; Ex. 15 at 54:20-55:19.
[39] Ex. 6 at 89:1-20.
[40] Ex. 16.
[41] *Id.*
[42] Ex. 17, Tr. of April 5, 2021, § 341 meeting at 15:16-24.

**About His Federal Income Tax Returns for 2017, 2018, and 2019**

39.     At the § 341 meeting held on July 23, 2020, Defendant admitted that he had not filed individual income tax returns for tax years 2017, 2018, and 2019, stated that he had been interviewing "quite a few people" to prepare those returns, and further stated that he anticipated the returns would be filed within sixty days or less.  Upon information and belief, returns had not been filed for any of the businesses controlled by Defendant for 2017, 2018, or 2019.[43]

40.     At the August 20, 2020, § 341 meeting—more than a month after the first meeting of creditors—Defendant stated that he had recently hired someone to use QuickBooks to get caught up with back taxes.[44]

41.     At the September 10, 2020, § 341 meeting, Defendant testified that he had hired an accountant to prepare the returns for him.  He did not provide a specific date on which he hired the accountant, William Agborouche, but stated it was "just recently."[45]

42.     Defendant stated at the January 26, 2021, motion to convert hearing that he had filed personal individual tax returns for tax years 2016, 2017, 2018, and 2019.  He also stated that Themis had filed tax returns for 2019.[46]  Defendant attached copies of his purported and incomplete individual returns to his objection to the IRS' proof of claim.  At that hearing, the Court stated:

> I find that the - - I've reviewed the tax returns that were attached to the - - IRS Proof of Claim - - are wholly insufficient.  None of the schedules are filed with the returns, and very little information - - no information about the status of the many LLCs, some of which may not be making money, some of which may be making money; but we wouldn't know that, because none of that information is included with the tax returns.[47]

---

[43] Ex. 6 at 34:6-14; Ex. 10 at 7:11-20.
[44] Ex. 10 at 11:13-17.
[45] Ex. 11 at 6:17-7:8.
[46] Ex. 5 at 31:9-32:14.
[47] *Id.* at 37:11-18.

43.     On July 8, 2020, the IRS filed a proof of claim asserting an unsecured priority claim

for Defendant's 2017, 2018, and 2019 federal income taxes, and a general unsecured claim for

Defendant's 2015 and 2016 federal income taxes, stating that all liability is estimated because

returns have not been filed for those years.[48]

44.     On January 26, 2021, Defendant filed an objection to the proof of claim filed by

the Internal Revenue Service and attached copies of his purported tax returns.[49]

45.     On February 10, 2021, the IRS filed a response stating that its records did "not

reflect the filing of the Debtor's 2017 through 2019 Federal Income Tax Returns."[50]

46.     Later that same day, Defendant filed an amended objection to the proof of claim

filed by the IRS, insisting that he had prepared and filed tax returns for 2017-2019.  Despite

attaching copies of the first two pages of the returns for each year, Defendant's objection does not

state when the returns for the stated years were filed.[51]

47.     On the next day, February 11, 2021, the IRS responded to Defendant's amended

objection, repeating that its records did not reflect that any tax returns had been filed by Defendant

for 2017, 2018, and 2019.[52]

48.     At the March 8, 2021, § 341 meeting, Defendant affirmatively testified that he had

physically filed his individual 2017, 2018, and 2019 federal tax returns, by mailing them to the

---

[48] *See* Claims Register No. 4-1, p. 4, n.1.
[49] *See* ECF 79.
[50] *See* ECF 96.
[51] *See* ECF 100.
[52] *See* ECF 102.

IRS.[53]  Defendant testified that he could not remember the exact date that he had mailed the tax returns but believed that it was "two weeks ago."[54]

49.      Defendant further testified that he had prepared the tax returns himself, because he was no longer able to reach Mr. Agborouche, the accountant he described hiring at the September 10, 2020 § 341 meeting.[55]

50.      On March 26, 2021, the IRS filed an Amended Proof of Claim for Defendant's income taxes.  The amended claim asserts an Unsecured Priority Claim for tax years 2017, 2018, and 2019, which was based on "Information from debtor or return received that is not yet assessed."[56]  The amended claim also asserts an Unsecured General Claim for tax years 2015 and 2016 and indicates that the "Liability is estimated based on available information because the return has not been filed."[57]

51.      To date, Defendant has yet to provide the United States Trustee with full and complete copies of his 2017-2019 federal income tax returns and has provided no returns for any businesses.  Indeed, it is not clear that Defendant ever filed any tax returns for any of his businesses.

***Defendant's Failure (or Refusal) to Provide Required Documents***

52.      Defendant also failed to provide any financial records for Themis Law, or any of his other business interests, and admitted as much at the § 341 meeting held on August 20, 2020.[58]

---

[53] Ex. 15 at 12:23-15:11.
[54] *Id.* at 13:4-8, 14:14-17, 23-25.
[55] *Id.* at 13:25-14:1, 15:19-25.
[56] *See* Claims Register 4-2.
[57] *Id.* p. 4, n.1.
[58] Ex. 10 at 13:6-14.

Defendant stated that Themis Law did not keep accounting books or other financial records except for Excel spreadsheets.[59]

53.      Defendant repeatedly testified that that he had someone working on preparing accounting records and that the records would be provided.[60]  Defendant even assured the United States Trustee that "Moving forward, we're implementing a program that will give you guys what you're requesting."[61]  Yet Debtor only ever provided limited Themis Law bank statements and other documents inadequate to reflect the financial affairs of his businesses.  None of the documents provided by Debtor constituted standard business records, such as balance sheets, cash flow statements, financial statements, or even the Excel spreadsheets Defendant said existed, for Debtor's business interests.

54.      Defendant also has refused to provide complete records from the IOLTA accounts held by Themis Law.  Upon information, the Themis Law IOLTA account ends in 4984, and Defendant only provided statements for a period of six prepetition months.  In response to the request for these records from the United States Trustee, following the 341 meeting on March 8, 2021, Defendant responded that he could not release the IOLTA account statements because he was unable to obtain the necessary approval from Mr. Babbs because he was out of town.[62]  Mr. Babbs provided IOLTA statements directly on April 15, 2021.

55.      Defendant also never provided the United States Trustee with bank statements or other financial records related to his other businesses.  All that has been produced to date are

---

[59] *Id.* at 13:15-20.  Partial records were eventually produced in March and April of 2021 after multiple requests via e-mail though the U.S. Trustee cannot confirm at this time if all records have been produced.
[60] *Id.* at 14:18-15:2.
[61] *Id.* at 13:12-14.
[62] Ex. 18.

Synergy Staffing bank statements, which Defendant eventually provided to the chapter 7 trustee's counsel.[63]

### Defendant's Failure to Account for Loss of Assets

56.     Defendant claims that, other than his salary, he took no income from Themis Law in 2020 or 2021.  However, the Themis Law account ending in 2953 bank statements for 2020 and 2021 show a total of $13,850 in Venmo transfers to Defendant from Themis between July 2020 and January 2021.[64]

57.     The Themis Law account ending in 2953 also shows several Zelle transactions to a recipient identified only as "John."  The phone number and/or email associated with the transaction has not been provided and the recipient is unidentified.[65]  In total, Zelle transactions to "John" total $37,300 during the period of July 2020 through March 2021from the Themis Law account ending in 2953.  There are two additional transactions for $800 to Defendant's daughter in August 2020 from the same account.

58.     The Themis Law accounts also show at least two withdrawals/transfers to unidentified accounts.  A transfer occurred in January 2021 from the Themis Law account ending in 2953 in the amount of $100, sending the amount to a checking account ending in 7605.

59.     The Themis Law account ending in 2953 also shows several CashApp Transactions to various recipients, including "Dave."  The transactions take place beginning in February 2021 and total $3,985.67 during the period of February 2021 and March 2021, including $3,100 to

---

[63] Ex. 17 at 59:3-61:6.
[64] Ex. 15 at 40:12-23; Ex. 17 at 37:11-19; Ex. 18.
[65] Ex. 19 at Maresca 725, 726, 734, 746, 771, 772, 787, 798, 799, 809, 810.

"William" and $210.67 to "Dave." The other recipients are similarly all identified solely by first name.[66] These transfers have never been disclosed or explained in any fashion.

60.     As discussed above, the Themis Law account ending in 2953 also shows that during the months of March 2020 through June 2020, approximately $66,007.50 was withdrawn in cash through transactions conducted in Prince William County, Virginia. Defendant's residence and Themis Law's offices are both located in Prince William County. Neither these cash withdrawals nor the disposition of the cash has ever been disclosed or explained.

61.     Additionally, at least $373,192 was transferred from two Themis accounts ending in 2940 and 2953 to an account ending in 8230. Upon information and belief, these were transfers to an account belonging to a purported vendor to both Synergy Law and Themis Law, TAS, LLC. Synergy Law's chapter 7 trustee has alleged that TAS was both an insider of Synergy Law and the recipient of fraudulent transfers from Synergy Law.[67]

62.     Defendant testified that Themis Law has only three accounts, and that access to those accounts was limited to himself and Mr. Babbs.[68]

### FIRST CLAIM FOR RELIEF
### Denial of Discharge – 11 U.S.C. § 727(a)(2)
### Fraudulent Transfers of the Debtor's and Estate's Property

63.     Each of the preceding paragraphs is incorporated here by reference, realleged and incorporated, as if set forth in its entirety.

64.     In accordance with 11 U.S.C. § 727(a)(2), the court shall grant a discharge unless:

the debtor, with intent to hinder delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed. . .

---

[66] Ex. 19 at Maresca 759, 772, 787, 788.
[67] Ex. 20, *Albert v. TAS, LLC*, Complaint, Adv. Proc. No. 21-10006-ELG (Bankr. D.D.C. Feb. 24, 2021).
[68] Ex. 15 at 26:1-13; Ex. 19 at Maresca 821.

(A)  property of the debtor, within one year before the date of the filing of the petition; or

(B)  property of the estate, after the date of the filing of the petition.

65.    Pre and postpetition Defendant has, upon information and belief, made or caused to be made at least $366,122 in transfers from accounts ending in 2940 and 2953 in which the estate has an interest to a bank account ending in 8230 without adequate disclosure, explanation, or authorization.

66.    Pre and postpetition Defendant has, upon information and belief, withdrawn or caused to be withdrawn at least $66,007.50 in cash from accounts (ending in 2940 and 2953) in which the estate has an interest, without disclosure, explanation, or authorization.

67.    Postpetition, Defendant has, upon information and belief, made or caused to be made at least $13,850 in Venmo transfers to himself from an account ending in 2953 in which the estate has an interest without disclosure, explanation, or authorization.

68.    Postpetition, Defendant has, upon information and belief, made or caused to be made at least $41,000 in transfers using Zelle and CashApp to unidentified recipients from an account ending in 2953 in which the estate has an interest without disclosure, explanation, or authorization.

69.    Pre and postpetition, Defendant has, upon information and belief, paid or caused to be paid his own personal expenses out of a business account ending in 2953 in which the estate has an interest without disclosure or explanation and without accounting for such payments as income.  The attached chart summarizes a sampling of these personal expenses.[69]

---

[69] *See* Ex. 21.

70.    Upon information and belief, Defendant in either his individual capacity or in his capacity as CEO (and of having actual control) of Themis Law PLLC and its accounts caused each and every of the above-referenced transfers to be made.

71.    Upon information and belief Defendant made or caused to be made each of the above-referenced transfers with intent to hinder, delay, and defraud his creditors and the estate.

72.    Such fraudulent transfers constitute a violation of 11 U.S.C. § 727(a)(2); accordingly, Defendant's discharge should be denied.

**SECOND CLAIM FOR RELIEF**
**Denial of Discharge – 11 U.S.C. § 727(a)(3)**
**Failure to Maintain Records**

73.    Each of the preceding paragraphs is incorporated here by reference, realleged and incorporated, as if set forth in its entirety.

74.    In accordance with 11 U.S.C. § 727(a)(3), the court shall grant a discharge unless:

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified in the circumstances.

75.    The United States Trustee is informed and alleges that Defendant has failed to provide, and thus either concealed, destroyed, or failed to keep or preserve the books and records for which his financial condition might be ascertained, including, without limitation, those related to Themis Law, PLLC, Synergy Staffing, LLC, the Grace and Truth Church International, Inc., and the other LLCs listed in the Defendant's Schedule A/B, as well as failing to disclose the sources and recipients of deposits and transfers via Venmo, Zelle, CashApp and cash withdrawals.

76.    Defendant failed to prepare and file timely individual tax returns for tax years 2017, 2018 and 2019, and apparently failed to file any individual returns for tax years 2015 and 2016 or

any returns for his active businesses, Synergy and Themis, at any time.  Moreover, Defendant has

failed to provide any copies of any tax returns to the United States Trustee.

77.    Such failure to maintain records constitute a violation of 11 U.S.C. § 727(a)(3);

accordingly, Defendant's discharge should be denied.


### THIRD CLAIM FOR RELIEF
### Denial of Discharge – 727(a)(4)
### False Oaths or Accounts

78.    Each of the preceding paragraphs is incorporated here by reference, realleged and

incorporated, as if set forth in its entirety.

79.    In accordance with 11 U.S.C. § 727(a)(4)(A), the court shall grant the debtor a

discharge unless the debtor "knowingly and fraudulently, in or in connection with the case – made

a false oath or account[.]"

80.    The United States Trustee is informed and alleges that Defendant, in connection

with his bankruptcy case, knowingly and fraudulently made materially false statements in the

documents he filed with in this bankruptcy case (original and amended), at the § 341 meetings

conducted in this case, and at the January 26, 2021, hearing.

81.    These statements are set forth in paragraphs 28 through 49, above including, *inter

alia*, Defendant's false statements regarding his business interests, his income, his assets, and

Themis Law's operations.

82.    The United States Trustee alleges, and evidence will demonstrate, that Defendant

has made these false oaths and accounts with specific intent to hinder, delay, and defraud his

creditors, including the victims of the Synergy Law and Themis Law scams, and the chapter 7

trustee.  Moreover, the sheer volume of misstatements or omissions, as well as their specific content, allow an inference that Defendant intentionally misrepresented the facts and circumstances of his financial affairs.

83.    Such false statements constitute a violation of 11 U.S.C. § 727(a)(4)(A); accordingly, Defendant's discharge should be denied.


## FOURTH CLAIM FOR RELIEF
### Denial of Discharge – 11 U.S.C. § 727(a)(5)
### Failure to Explain Loss of Assets

84.    Each of the preceding paragraphs is incorporated here by reference and realleged, as if set forth in its entirety.

85.    In accordance with 11 U.S.C. § 727(a)(5), the Court shall grant the debtor a discharge unless:

> The debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets of deficiency of assets to meet the debtor's liabilities.

86.    Pre and postpetition, upon information and belief, Defendant has received at least $15,000 in Venmo and CashApp transfers from Themis Law accounts but has not satisfactorily explained what happened to that money.

87.    Additionally, upon information and belief, Defendant caused $66,007.50 in cash withdrawals to be made from a Themis Law account during a six-month period prepetition, the disposition of which cash has never been disclosed nor explained.  Defendant disclosed only $1,500 of cash on hand, and no bank accounts, in his schedules.

88.    It is unknown whether Defendant still has possession of any or all of the above-referenced money.

89.     Additionally, upon information and belief, Defendant made or caused to be made over $41,000 in postpetition Zelle and CashApp transfers from a Themis Law account to unidentified individuals that have never been disclosed nor explained.

90.     Defendant's vague, contradictory, or nonexistent explanations of the financial accounting of his business, Themis, are inadequate.

91.     Defendant has failed to explain satisfactorily his loss of assets or deficiency of assets to meet liabilities, therefore, Defendant's discharge should be denied under 11 U.S.C. § 727(a)(5).

**FIFTH CLAIM FOR RELIEF**
**Denial of Discharge – 11 U.S.C. § 727(a)(7)**
**Committing a Specified Act in Another Bankruptcy Case**
**Concerning an Insider**

92.     Each of the preceding paragraphs is incorporated here by reference, here realleged and incorporated, as if set forth in its entirety.

93.     In accordance with 11 U.S.C. § 727(a)(7), the Court shall grant the debtor a discharge unless:

> the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, . . . or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

94.     Defendant has been the subject of a contempt motion in *In re Synergy Law, LLC*, Case No. 19-00555 (Bankr. D.D.C.), which Defendant caused to be filed on August 16, 2019, as Synergy Law, LLC's majority owner and CEO.  On January 9, 2020, the court in *Synergy* issued an order to show cause against the debtor company Synergy to explain why complete and accurate

schedules had not been filed almost five months after the petition date, and why Synergy had not otherwise cooperated with the Chapter 7 trustee's attempts to administer the bankruptcy estate.[70]

95.    On August 20, 2020, the court issued an order discharging the Order to Appear and Show Cause but making no finding that the debtor had made complete and accurate schedules or cooperated with the trustee.[71]

96.    The record in the *Synergy* case further demonstrates Defendant's dilatory conduct.

97.    Such actions by the Defendant, as an insider, i.e., the principal owner and CEO, of the debtor in another bankruptcy case violate 11 U.S.C. § 727(a)(7), therefore, Defendant's discharge should be denied under 11 U.S.C. § 727(a)(7).

WHEREFORE, Plaintiff United States Trustee prays:

1.    That Defendant's discharge be denied;

2.    For such other and further relief as the Court deems just and proper.

May 6, 2021                              Respectfully submitted,

JOHN P. FITZGERALD, III
Acting United States Trustee, Region 4
Judicial Districts of Maryland, South Carolina,
and Virginia

by: */s/ Michael T. Freeman*

MICHAEL T. FREEMAN (VA 65460)
Assistant United States Trustee
Office of the U.S. Trustee
1725 Duke Street, Suite 650
Alexandria, VA 22314

---

[70] *See In re Synergy Law, LLC*, No. 19-00555 (Bankr. D.D.C.), ECF No. 75.
[71] *See Synergy Law*, ECF No. 183.

Telephone no. (703) 557-7176
Facsimile no. (703) 557-7279
Michael.T.Freeman@usdoj.gov